And we are going to go on to the very last case of the day, and that case will be 1829-40 Durini-Garcia v. William Barr. Good morning, Your Honor. May it please the Court.  May it please the Court. My name is Royal F. Berg and I represent the petitioner in this last matter before you this morning, Your Honors, Edwin Durini-Garcia. Mr. Durini, Your Honors, is the father of two United States citizen children. He himself has resided in our country since 2003, being brought here shortly after his 16th birthday. In 2017, he became aware for the first time that he had been order-removed in absentia by an immigration judge in Chicago in 2003. He immediately retained counsel and filed a motion to rescind that order with the immigration judge here in Chicago. The same judge that issued the order in 2003 denied it on December 7, 2017. I'm going to stop you for one second because you've asked us to hold these proceedings in abeyance pending the resolution of your motion to reconsider and motion to reopen with the board. Can you tell us the status of those motions? Yes, Your Honor. Counsel, in his brief, says the automated system does not register that those motions were filed. I did call the board this morning, and both the motion to reopen and the motion to reconsider are still pending. I was advised what I had already known, that the motion to reconsider was received on September 7, 2018, and the motion to reopen was received on October 31, 2018. Both, therefore, are timely filed. As of this morning, I called at 8 o'clock their time, 7 o'clock our time, and was advised that they are both still pending. Your Honor, as you just mentioned, we have filed, the board first dismissed the appeal of the judge's order in a one-sentence decision without opinion on August 7, 2018. A timely petition for review was filed, and the motion to reconsider and the motion to reopen are both still pending. Your Honor, the Immigration and Nationality Act provides very strict limits on when an in absentia removal order may be entered. And what the statute provides is that an order can be entered, in absentia can be entered, only if the government establishes by clear, unequivocal, and convincing evidence two basic things. Number one, that proper notice of the hearing, written notice, was given. Secondly, that the non-citizen is removable. Both must be proved by clear, unequivocal, and convincing evidence. Now, an in absentia order may be rescinded at any time by a motion to rescind if the non-citizen establishes that he did not get notice of the hearing. Or, also within 180 days, if the non-citizen establishes the failure was because of exceptional circumstances. Now, Your Honor, in her December 7, 2017 order, Judge Giambastiani acknowledges that her 2003 order was brought back to the court as undeliverable. She puts the blame on the petitioner. She ignores the fact that that order was sent to the wrong address. But here, how do you respond to the government's claim that the only issue raised before the board was whether exceptional circumstances existed? If that is the only issue that was preserved, how could the petitioner obtain any relief here, given that the immigration judge accepted as true that there were exceptional circumstances, and based its decision on other grounds that were not challenged? Your Honor, I think given the broad due process dimensions here, and the fact that he was denied a hearing, the fact of his age at that time, I think, Your Honor, that this court does have jurisdiction to address those issues. Alternatively, we have asked for the court to hold an advance. Now, what counsel has suggested in a footnote, I believe it's footnote 11 of page 19, that perhaps the case should be sent back in light of INS versus Ventura, or remanded to the board, for the board to address these issues. When you say counsel, you... I mean, counsel for the government. Say that again. As I read footnote 11 of page 19 of their brief, he suggests that if the arguments have not been exhausted, then it can be sent back, or should be sent back to the board, or remanded back to the board, under INS versus Ventura, Supreme Court decision 2002. But I need to know why they haven't been exhausted. Well, Your Honor, I was not the initial attorney in the case, and came in after the board had dismissed. Now, I'm not sure the initial attorney was aware of what Judge Giambastiani and the board were aware of. In other words, he didn't have in front of him that envelope that showed it had been returned. He didn't have the notice in front of him showing it had the wrong address. Now, when his client was taken into custody in 2017, he filed a motion to rescind. I did not become aware of that envelope being returned undeliverable until the certified administrative record was filed with the court and a copy served on me. Nevertheless, Your Honor, I think if we look as well at the underlying order itself, the 2003 order, she used the wrong standard. She said that they had proven it by clear and convincing evidence. The standard under the statute is clear, unequivocal, and convincing evidence. It was the wrong standard. It was not sent to the address in the file. Therefore, given the totality of the circumstances, Your Honor, given the fact of the age of this young man, given what he's facing, he is terrified of going back to Guatemala, where his uncle was killed and he is also fearful that something will happen to him. I never had a hearing, Your Honor. He was only 16 when this happened. He did not fully understand the consequences. He did not have a way to get to court himself and did not become aware of these proceedings until many years later. Your Honor, I think given the totality of the circumstances, the gravity of the harm that he's facing, that you can address these issues or send them back to the board and ask the board to address them. Save some time. Thank you. Okay, Mr. Remnitz. Oh, my. Thank you. May I please equate Your Honor, Tim Remnitz on behalf of the United States Attorney General. Let me start you out by also asking you, you know, about holding in abeyance during the resolution of this motion to reconsider, motion to reopen with the board. If still pending, as we're told they are, would there be any benefit in holding these proceedings in abeyance to await the resolution of those motions? There would not, Your Honor. He's raising an entirely new issue in this motion to reopen, which is that it's basically an asylum claim, and that the board can properly consider, and motion to reopen is the proper vehicle for such a claim. New evidence of a new claim, that's motion to reopen filed with the board, which, if denied, would result in a new PFR before the court. But I also called that number last week to confirm what the briefing attorney found, and I didn't find a record of it myself. But, again, it really does not matter because the proper vehicle is a motion to reopen. Otherwise, the government argues in this in absentia removal case that the petitioner has not exhausted his arguments regarding lack of notice and regarding the other way to reopen in absentia removal order, which is exceptional circumstances. Does this panel have any questions regarding the government's arguments concerning lack of exhaustion? But his main argument regarding notice, and I won't belabor them if the panel has no questions, but he's now for the first time arguing that he lacks notice because of legal capacity, that he was 16 years old at the time he was served with notice of the hearing. This was not raised before the board. Instead, he argued that a logistical argument that a minor perhaps could not find a way to court because they lacked a driver's license, that's not a challenge to legal capacity. Otherwise, the arguments he raises towards notice that the wrong standard was used in the immigration judge's order, that was not raised before the board, and that is something the board can certainly address and provide a remedy for. And when we get to exceptional circumstances, which is the only other way to reopen in absentia removal order, yes, the immigration judge took as true that perhaps it was an exceptional circumstance that his mother moved him across the country. However, there was a threshold determination that he had to prove equitable tolling applied to the 180-day filing deadline. The immigration judge gave various reasons for why equitable tolling did not apply. The petitioner did not challenge it before the board and does not challenge it before the court. So in sum, his arguments are either not exhausted or waived when it comes to either one of the two avenues reopening in absentia removal order. Well, was there some updated address that the government had or something? I mean, this is back when he was, I guess, 16 when they didn't put north and said whenever the address wasn't complete. It had the right name of the street but didn't say which end of the street. And I, is that the last known address until he, I don't know when the next encounter was with, was it when he was 30 years old or something? I don't know. Yes, the last known address was the Hoyne Street address. Yeah, but it didn't say Hoyne, it said Hain. That is correct. There is no Hain Street. That's correct. I g-mapped myself to make sure and there is no Hain Street and it does appear it may have been improperly. The notice of the decision may have been improperly delivered in this case. That, again, could be exhausted for the board. The board can provide a remedy for that. But it also is irrelevant, unfortunately, to what he's trying to do here. To reopen his absentia removal order needs to show lack of notice of his hearing or exceptional circumstances. And that does not speak at all to lack of notice of his hearing. That was personally served upon him. So if the subsequent decision was sent to the wrong address, that doesn't qualify for either one of these exceptions. It's really irrelevant, unfortunately, to what he's trying to do. But, again, it's not exhausted either. What I'm looking at is what, there's a lot of years in between. And was he, for any other reason, I don't want to use the word expose, but determined that he's not a legal immigrant? So this goes to the immigration judge's due diligence determination. The immigration judge does go through exposures that Petitioner presumably had to immigration status, his own immigration status. So the immigration judge explains is that, for one, he was personally served a notice of his hearing when he was apprehended by Border Authority shortly after entry. When? That was in 2003. So from that point on, the next 14 years, he presumably was aware something was amiss with his immigration status. But be that as it may, he and Zappa Davis stated his wife had no immigration status and she pursued DACA and obtained DACA. So the immigration judge quite reasonably said it sounds like your family is familiar with immigration status and pursuing legal status. So it just didn't seem plausible that he would claim after 14 years that he, this whole time, had never was aware of his immigration status. And there was other reasons that he also claimed to be gainfully employed throughout these 14 years. And the immigration judge also stated, well, certainly your status must have come up during your employment. So what DHS said, on the other hand, was it seemed to be that once he got arrested on an assault charge in Chicago, that is when he moved to reopen his case. So the immigration judge's finding that he seemed to have exposure, he didn't really believe that he had no knowledge of immigration status throughout those 14 years. And Petitioner has never challenged that finding either. Okay, and with the assault, the assault was what, last year? When was the assault? Yes, it appears so. But there's no, that criminal record is not in our record. But Petitioner has also never refuted that or disputed that he was arrested for that crime. Does anyone have any other questions? Thank you. Thank you, Your Honor. And Judge Mannion, I would agree with counsel's assertion that was, there's nothing in the record that I found that showed that USCIS had made any efforts to remove him or that he was aware of this order. Being aware that a person is undocumented and knowing that you've been ordered removed are two different things. And I don't believe they've shown at all here that he was served that order or aware of it until 2017, so 14 years later. Once again, consider his age at the time when it happened. Consider that he did not speak English. Consider that he was taken by his mother away and that he had no way to get to the court on his own. Consider what he's facing. He's terrified of going back. That's what I think, in 03, is it 03? 2003, Your Honor, yes. Yeah, and there's a lot of time in between. That's all I'm asking. And we acknowledge that, Your Honor. But once again, Judge Giambastiani did not cite any case law to support her assertion that not coming forward during that period was not exercising due diligence. What she didn't acknowledge was that she had a file in front of her that showed the envelope had come back that had shown that it was addressed incorrectly. No question about that. She could have cleared that. So could the board. The board could have also cleared the fact that the wrong evidentiary standard was used. The board is required to show that it's heard and thought and not really reacted. We'd say that they didn't do that. I guess what I'm curious about, and maybe that's just because I see what's going on now, there must have been some encounter somewhere. He had a job or something? Well, he had no way, he did not have notice of the inoffensive removal order. We're not contending he thought he was legal in the country or he thought he had the right to be here. He knew better than that. What he knew, what he did not know, excuse me, Your Honor, was that he had been ordered to remove in absentia in 2003. As soon as he became aware of that, Your Honor, he retained counsel and immediately took steps to try to get that order rescinded. He became aware of that when he was arrested? 2017. Once again, Your Honors, Judge Giambastiani had sua sponte authority to reopen. That's another way that these orders can be reopened. That was requested and she denied to do that. We think, Your Honor, she abused her discretion because she said, well, you haven't come forward for the last 14 years. But she ignored the fact that the order was sent to the wrong address. She ignored the fact that in 2003 she had used the wrong standard. Your Honors, we ask you again to look at the totality of the circumstances here, the due process deprivation. She was the same judge? Yes, Your Honor. She was the same judge and she's getting ready to retire. Yeah, I imagine. She issued the order in 2003 and she denied the rescission order in 2017. So once again, Your Honors, we would ask that you give this young man a chance of a hearing on his request to be able to stay in the country. Once again, we don't believe that the government properly met its burden initially in 2003 and we believe that the board and the immigration judge erred in not rescinding that order. We thank you very much. And I thank both of you and the case will be taken under advisement and the court will be in recess until tomorrow morning at 9.30. And thank you very much. Okay. Thank you.